**COOPER POWER, LIGHT & ICE CO. v. McDANIEL & GLASPIE. (No. 8604.)**

(Court of Civil Appeals of Texas. Dallas. Jan. 7, 1922. Rehearing Denied Feb. 11, 1922.)

1. Trial ⚖═350(4)—Refusal to submit issue as to whether defendants entered into different contract after that alleged in cross-complaint held erroneous.

In an action to recover an amount due for ice sold and delivered to defendants, who counterclaimed for damages for failure to furnish sufficient ice to supply their retail trade as agreed, the court erred in refusing to submit an issue as to whether defendants, during an ice shortage, agreed with plaintiff as to how much ice should be delivered to them while such shortage continued.

2. Trial ⚖═350(4)—Refusal to submit issue as to plaintiff's readiness and willingness to perform contract held erroneous.

In an action to recover for ice sold defendants, who counterclaimed for breach of contract in failing to furnish sufficient ice to supply their retail trade, to which plaintiff submitted evidence that defendants quit selling ice while plaintiff was furnishing more than the quantity per day agreed on, and that it was ready and willing to continue to furnish ice daily for the remainder of the season, but that defendants failed to call for it after a certain date, the court erred in refusing to submit the issue as to plaintiff's readiness and willingness to deliver ice to defendants.

Appeal from Delta County Court; T. B. Lane, Judge.

Action by the Cooper Power, Light & Ice Company against C. L. Glaspie, in which Ira McDaniel joined as party defendant. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Newman Phillips, of Cooper, for appellant. C. C. McKinney and Aubrey T. Steel, both of Cooper, for appellees.

VAUGHAN, J. Appellant, as plaintiff in the court below, filed its suit against C. L. Glaspie, one of the appellees, to recover the sum of $203.80, alleged to be due appellant for ice sold and delivered and for ice books furnished to appellee Glaspie. Appellant was a manufacturer of ice at Cooper, Tex., and the ice bought from appellant was in turn sold by appellee Glaspie at retail in Cooper, Tex.

Amended answer was filed in which appellee C. L. Glaspie and Ira McDaniel joined as party defendants to the suit as instituted by appellant, appellees admitting in said answer that they were jointly indebted to appellant in the sum sued for, subject to appellees' counterclaim for damages for breach of contract alleged to have been made between appellant and appellees as follows:

"That on or about the 15th day of April, 1919, plaintiff and defendants entered into a contract and agreement by which the plaintiff contracted and agreed to furnish these defendants all the ice necessary to supply the demand of the retail trade in the city of Cooper, Delta county, and surrounding vicinity, during the ice season of 1919, to wit, from 26th day of April, 1919, to the 30th day of September, 1919, at an agreed price of $5.50 per ton. * * * That the plaintiff did furnish the defendants ice in accordance with said contract until about

the 10th day of July, 1919, when said plaintiff, through its manager, E. D. Broadhead, failed and refused to furnish the defendants any more ice at $5.50 per ton. That on or about the 10th day of July, 1919, the plaintiff failed and refused to furnish any more ice at the rate of $5.50 per ton as he had contracted and agreed to do, and told these defendants that he would not furnish them any more ice for their retail trade for less than $7 per ton. That appellees agreed to pay appellant the sum of $7 per ton for ice" for the balance of the ice season, to wit, July 10, 1919, to September 30, 1919. That from the 10th day of July, 1919, to the 7th day of August, 1919, plaintiff failed and refused to furnish these defendants sufficient ice to furnish their retail ice trade for Cooper and vicinity as it had promised, agreed, and contracted to do. Appellees further alleging that by reason of said breach of said contract as alleged by them, they sustained actual damage in the sum of $981, for which sum they sought judgment, less the sum of $203.80, admitted by them to be due appellant for ice, etc.

Appellant, by supplemental petition replying to appellees' amended answer and cross-action, denied having entered into the character of contract set up by appellees, but specially pleaded that in July, 1919, it rearranged its contract with appellee Glaspie, and agreed to furnish him a certain amount of ice per day from that date, and that it did so, or offered to do so, and that about August 6, 1919, appellee Glaspie abandoned the ice business while appellant was still furnishing him the amount of ice provided for by the agreement made in July, 1919, and that appellant would have continued to furnish him the amount of ice in accordance with the terms of such subsequent agreement had he called for and received same as per the terms thereof.

The trial court submitted the case to the jury upon special issues, and, on the answers made thereto, the court rendered judgment in favor of appellees against appellant for the sum of $291, with interest at the rate of 6 per cent. per annum, etc.

[1] Appellant complains of the refusal of the trial court to submit for the finding of the jury the following issue of fact:

"Did or not the defendant, about the 21st day of July, 1919, agree with E. D. Broadhead as to how much ice should thereafter be delivered to Glaspie, or Glaspie & McDaniel, each day as long as the ice shortage continued"

—appellant having alleged that an agreement was entered into with the appellee Glaspie in July, 1919, as to how much ice it should thereafter furnish him, and, having introduced evidence in support of such issue through the testimony of E. D. Broadhead, appellant's manager, as follows:

"When the demand was more than could be supplied, I talked it over with Glaspie one night, and I told him I wanted to do the right thing by the country as well as the town in the distribution of what ice I could make or get. He was getting each day more ice than I was willing to give him. I suggested to him that I would go the next morning and meet with some of the business men at the Chamber of Commerce, and we would discuss the situation. I did so. Several of the representative men of the town and Glaspie were there, and I explained the situation just like it was. I told them that there was not enough ice for the town supply and the country people too. I told them I was willing, if they said so, to throw the doors open and let everybody have ice as long as there was any, if they thought that was the right thing to do. No one present seemed to be willing to suggest a way out of the trouble, and I suggested that I set aside each day for the town 30 blocks and one-half of all over that amount that I could make at the plant and one-half of any other that I could get shipped in, and to reserve for the country trade the rest of the ice. Everybody seemed to think that was right. Glaspie told me personally that he thought that was a fair way to handle the situation, and that it was perfectly satisfactory to him. This was, I think, on July 21st, and we started out then to handle the situation on that basis. I furnished Glaspie and McDaniel ice from that day on as long as they came for ice more than the agreement called for."

Appellant had the right to have such issue submitted to the jury, and it was material error for the court to refuse to do so.

[2] Appellant also requested the court to submit for the finding of the jury the following issue:

"When Glaspie, or Glaspie & McDaniel, quit receiving ice from plaintiff, was the plaintiff then ready and willing to deliver to him, or them, ice at his place of business in Cooper?"

Appellant, replying to appellees' pleadings alleging the making of a certain contract and the breach thereof, and seeking to recover damages by reason of such breach, alleged:

"That the defendant Glaspie quit selling ice in Cooper, Tex., about the 7th day of August, 1919. That at that time the plaintiff was furnishing to the defendant about 45 blocks of ice per day, for which the plaintiff was charging the defendant $7 per ton of 2,000 pounds, and which the defendant was selling at retail at $14 per ton in Cooper, Tex. That the plaintiff was ready and willing and would have continued to furnish defendant ice in the same amount each day of the remaining season for the sale of ice at the same price, and which the defendant had he remained in business could have sold at retail in Cooper for the price of 70 cents per hundred pounds."

In support of the issue thus presented, appellant introduced the following testimony:

"Their average number of blocks under the agreement [meaning the agreement entered into on about July 21st] would have been 42 blocks per day, but I furnished them an average of 51 blocks per day as long as they came for ice. They quit handling ice about August

6th. Glaspie told me that they could not make anything unless they could get more ice. I discussed it with him, and asked him about how much his daily expense was, and he told me. I figured up his expense, and figured the amount he was getting for the ice he was selling each day, and it showed a net profit to him of more than $10 per day. They did not send to the plant for any more ice after August 6th. I would have continued to furnish the amount of ice agreed upon or more than I was doing if they had called for it for the rest of the season."

One of the principal questions involved was whether or not appellant had breached its contract with appellees, in the manner alleged by them, in failing to furnish them ice under the terms and provisions of the contract entered into as alleged by appellees in their cross-action; therefore whether or not appellant was performing its contract with the appellees by furnishing them ice at the time when appellees abandoned the ice business and quit receiving ice from the appellant was a material issue of fact upon which appellant had a right to a finding by the jury. Shaller v. Johnson-McQuiddy Cattle Co., 189 S. W. 553; St. Louis S. W. Ry. Co. of Texas v. Stone-De Lane et al., 156 S. W. 906.

Having pleaded an affirmative defense to the counterclaim set up by appellees, and introduced evidence in support of same requiring the submission of the issue thus raised to the jury, it was appellant's right to have such defense affirmatively presented to the jury. Therefore it was material error for the court to refuse to submit to the jury the above special issues requested by appellant. Bean v. Hall, 185 S. W. 1054.

We are of the opinion that the other assignments are without merit; therefore same are overruled.

On account of the errors above pointed out, the judgment of the court below is reversed, and the cause remanded.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 15, 1922.