## EASTERN TEXAS ELECTRIC CO. v. KAPPE. (No. 723.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 28, 1921. Rehearing Denied Dec. 14, 1921.)

1. **Carriers ⬅316(5)—Derailment caused by animal on track raises rebuttable presumption of negligence.**

When a derailment results from a collision of a passenger train with an animal on the track, a presumption of negligence arises against the carrier, which can be rebutted by the carrier only by showing that it was free from negligence, and to meet this burden it must show that in all matters which might have been connected with the accident ·it has exercised that high degree of care, skill, and foresight which is required of it by the nature of the business.

2. **Trial ⬅253(9)—Requested special charge failing to embrace all possible negligence held properly refused.**

In a passenger's action for injuries in a derailment caused by a cow on the track tried on special issues, a requested special charge as to defensive facts, which failed to embrace all matters connected with the accident in regard

to which defendant might have been negligent, held properly refused.

**3. Trial ⬌350(2)—Refusal to submit part of issues as to negligence held proper.**

In a passenger's action for injuries in a derailment, where defendant did not ask to have submitted all phases of the case in which the jury might have found negligence, it was not error to refuse to submit some of them, since, when only a portion of such issues are asked to be submitted, those requested become only evidentiary on the ultimate issue of negligence.

**4. Carriers ⬌314(8)—Plea of carrier's negligence causing derailment held general, and not particular.**

In a passenger's action for injuries sustained in a derailment caused by a cow on the track, allegations that the derailment would not have happened except for the negligence of defendant and that such negligence was the proximate cause of the injury, but that the reason for the derailment and the particular acts of negligence were peculiarly within defendant's knowledge, and not within plaintiff's knowledge, held not to constitute a particular, rather than a general, plea of negligence.

**5. Carriers ⬌317(9)—Evidence of killing of cattle prior to derailment held admissible on issue of unavoidable accident.**

In a passenger's action for injuries sustained in a derailment caused by a cow on the track, evidence that as many as 18 head of cattle had been killed on the right of way prior to the derailment held admissible on the issue of unavoidable accident.

**6. Evidence ⬌147—Negative testimony as to cattle on right of way held admissible in action for injuries from derailment by cow on track.**

In a passenger's action for injuries sustained in a derailment caused by a cow on the track, where plaintiff had introduced evidence that the cattle had been killed on the right of way before, testimony by one of defendant's employés, whose duty required him to go over the tracks, that he had never seen cattle on the right of way held admissible.

**7. Trial ⬌250—Instructions that carrier was not insurer held properly refused as not raised by pleadings or evidence.**

In a passenger's action for injuries sustained in a derailment caused by a cow on the track, where the issue of insurer was not raised by the pleadings or the testimony, the case going to the jury on special issues, it was not error to refuse a charge that defendant was not an insurer of plaintiff's safety while a passenger.

**8. Carriers ⬌321(12)—In suit for injuries from derailment caused by cow, instructions as to duty to fence right of way held properly refused.**

In a passenger's action for injuries from a derailment caused by a cow on the track, defendant was not entitled to a charge that it rested under no statutory obligation to fence its track, though it had done so; it being for the jury to determine whether the proper care was exercised in constructing the fence and in maintaining it.

**9. Trial ⬌352(1)—Special issue as to degree of care resting on carrier held not erroneous as invading province of jury.**

In a passenger's action for injuries sustained in a derailment caused by a cow on the track, a special issue as to whether the derailment was caused by defendant's negligence, and as to the degree of care resting on it, held not vague and indefinite or by its form calculated to prejudice the jury into believing that defendant was guilty of negligence, or as constituting a charge on the weight of the evidence.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Henry Kappe against the Eastern Texas Electric Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Orgain & Butler, of Beaumont, for appellant.

C. W. Howth, of Beaumont, and Ewing Werlin, Presley K. Ewing, and Guy Graham, all of Houston, for appellee.

WALKER, J. Appellant operates an electric railway between the cities of Beaumont and Port Arthur in Jefferson county. For some years it has had its right of way between these cities fenced. On the 28th of December, 1919, a few miles out of the city of Port Arthur, one of its cars struck a cow and was derailed. Appellee, who was a passenger on this car, suffered serious injury by reason of the derailment, and this suit was brought for damages for such injury.

The case was submitted to the jury on the following special issues:

(1) "Do you find from a preponderance of the evidence that the derailment and turning over of the defendant's car or train on the occasion in question was caused by negligence on the part of the defendant company? Answer 'Yes' or 'No.'

"In connection with issue No. 1, you are instructed that negligence, as applied to this case, means the failure to use that high degree of care that a very cautious and prudent person would have used or exercised under the same or similar circumstances."

The jury answered, "Yes," to this question.

(2) "Do you find from a preponderance of the evidence that the plaintiff was injured substantially as alleged by him, by the derailment and turning over of said car or train on the occasion in question? Answer 'Yes' or 'No.'"

The jury answered, "Yes," to this question.

"If you shall answer issues Nos. 1 and 2 'Yes,' and only in that event, then you are asked: Was such negligence of the defendant the proximate cause of plaintiff's injury? Answer 'Yes' or 'No.'

"In connection with issue No. 3, you are instructed that 'proximate cause' means an efficient cause, without which the alleged injury would not have happened, and from which, danger or injury to plaintiff or to some one similarly situated might reasonably have been anticipated as a natural or probable consequence."

---

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

To this question the jury answered, "Yes."

(4) "Do you find that the derailment or turning over of said car or train on the occasion in question was the result of an inevitable or unavoidable accident? Answer 'Yes' or 'No.'

"In connection with issue No. 4, you are instructed that an inevitable or unavoidable accident means the happening of an event from an unknown cause, or an unusual and unexpected event from a known cause."

To this question the jury answered, "No."

(5) "What sum of money, if paid now, will reasonably and fairly compensate plaintiff for the injuries sustained, if any, as are alleged in plaintiff's petition, and which the evidence shows you were sustained, if any?

"In measuring such compensation, if any, you will take into consideration such physical suffering, if any, as plaintiff has suffered in the past in consequence of such injuries, if any, and such physical pain, if any, as he may in reasonable probability suffer in the future; and such loss of time of diminished earning capacity, if any, as he may have suffered in the past by reason of such injury, if any, and that he will in reasonable probability suffer in the future, if any. Answer by giving the amount."

To this question the jury answered, "$7,-000.00."

Appellant assigns error on the refusal of the court to give to the jury the following special charge in connection with issue No. 1:

"Gentlemen of the jury, you are instructed, in answering special issue No. 1 of the court's charge, that if you believe from the evidence adduced upon the trial of the cause, that the defendant exercised reasonable care and diligence which very cautious persons generally use, in their line of business, under similar circumstances, to construct and to keep the right of way fence in such repair as to prevent cattle from going through such fence, and upon the track at the place in question; and if you believe from the evidence adduced upon the trial of the cause that the defendant company exercised reasonable care and diligence which very cautious persons generally use, in their line of business, to select and install a cattle guard on the north side of Kolb's crossing, and at the next crossing north of Kolb's crossing, under similar circumstances, such as to prevent cattle from crossing over said cattle guards to the place in question, although if you believe from the evidence, if such is a fact, that the defendant was mistaken in its choice of such cattle guards, if such is a fact, and that such cattle guards so selected and installed would not turn cattle, if such is a fact; and if you believe from the evidence adduced upon the trial of the cause, that the defendant company exercised that high degree of care and skill, which very cautious persons generally, in their line of business, are accustomed to use, under similar circumstances, to select and maintain the Interurban cars in question, so as to prevent danger or injury to its passengers, if such was a fact; and if you believe from the evidence adduced upon the trial of the cause, that the defendant company exercised that high degree of care and skill which very cautious persons generally, in their line of business, are accustomed to use, under similar circumstances, to select and maintain its railing, ties, and roadbed so as to prevent injury to its passengers, if such is a fact; and if you believe from the evidence adduced upon the trial of the cause, that the defendant company exercised that high degree of care and skill which very cautious persons generally, in their line of business, are accustomed to use, under similar circumstances, in the selection of the operatives of the Interurban in question, if such was a fact; and if you believe from the evidence that the operatives of said Interurban car in question exercised that high degree of care and skill which very cautious persons generally, in their line of employment, are accustomed to use, under similar circumstances, to operate said car so as to avoid injury to the passengers, if such is a fact—you will answer special issue No. 1 of the court's charge, 'No.'"

[1] We do not condemn this charge on the ground that it is a grouping of defensive facts on special issues. Heretofore we have approved this practice. Railway Co. v. Lynch, 208 S. W. 721. And though other courts of civil appeals have differed from us, we shall adhere to our construction of the special issue statute until the Supreme Court shall have disposed of the question, in view of the fact that Kahler v. Carruthers, 18 Tex. Civ. App. 216, 45 S. W. 160, seems to be in point with our holding. But this charge was properly refused on other grounds. When a derailment results from the collision of a passenger train with an animal on the track, a presumption of negligence arises against the carrier, which can be rebutted by the carrier only by showing that it is free from negligence, and to meet this burden it must show:

"That in all matters which, under the evidence, might have been connected with the accident, it has exercised that high degree of care, skill, and foresight which is required of it by the nature of the business." 6 Cyc. 632.

[2] An examination of the requested charge shows that it did not embrace within its terms all matters connected with the accident in regard to which appellant might have been negligent. It was its duty, not only to exercise the proper care in selecting and installing cattle guards, but the same duty rested on it to maintain the cattle guards. Though an issue was raised as to the proper maintainance of the cattle guards, this special charge says nothing about that duty. Also, cattle frequently entered on appellant's track, both through its fences and over its cattle guards. Appellant recognized its duty to passengers on its cars by driving the cattle off its track on other occasions. On the day of this accident, cattle were seen at and near the place of the accident for several hours before the accident occurred. A duty rested on appellant, under the facts, to exercise a high degree of care to get the cattle off its right of way. Yet this charge is silent as to such duty.

A similar charge was asked in relation to

issue No. 4, which was properly refused, for the reason that it did not include all matters which might have been connected with the accident, even if "inevitable or unavoidable accident" was an issue in the case. As applied to accidents of this character, we have heretofore expressed our views on that issue (Eastern Texas Electric Co. v. Hunsucker, 230 S. W. 817; Railway Co. v. Cook, 214 S. W. 539; Eastern Texas Electric Co. v. Woods, 230 S. W. 498), to which we are inclined to adhere.

[3] The different matters grouped in special charge No. 11 were presented in separate issues, which the court refused to submit. As appellant did not ask to have submitted all phases of the case on which the jury might have found negligence, no error was shown in the refusal to submit some of them. When only a portion of such issues are asked to be sent to the jury, those requested become only evidentiary on the ultimate issue of negligence vel non.

As the testimony offered by appellant did not, as a matter of law, exonerates it from the prima facie case arising out of the circumstances of the accident itself, it was not aided by the rule that when such prima facie is met, the plaintiff must show negligence in relation to the derailment. The most that can be said in favor of appellant's case is that it was entitled to go to the jury on the issue of the exercise of the proper degree of care in discharging its duty to appellee. This duty was fully submitted to the jury under issue No. 1. To have a fuller submission of that issue, as we have said, appellant's special charge and issues should have been all-inclusive of all phases of negligence arising in the case.

[4] Appellee pleaded negligence against appellant as follows:

"That the aforesaid derailment, whereby said Henry Kappe was injured as aforesaid, would not ordinarily happen where those who have the management, control, and operation of such car, use proper care in and about such management, control, and operation, and said derailment in question was due to the negligence of the defendant, by its employés and agents acting for it within the course of their employment, and such negligence was the proximate cause of aforesaid injuries to plaintiff; but the reason and cause of said derailment, and the particular acts of negligence which caused and produced it, are peculiarly within the knowledge of the defendant, and are not within the knowledge of this plaintiff, who cannot more definitely or more fully allege them."

We do not agree with appellant that these allegations constitute a particular rather than a general plea of negligence, and overrule all assignments based on this construction of such plea.

[5, 6] The court did not err "to the prejudice of defendant in permitting the witness Kolb to testify, over objection of defendant, that there had been as many as 18 head of cattle killed on the right of way north of Kolb's crossing prior to the derailment, the defendant's objection being that the testimony did not fix the time with sufficient certainty so that the defendant could know as to what day or days said animals, if any, were killed, because the evidence was immaterial and irrelevant as to any issue in the case, and incompetent, in that it did not show whether said animals, if any, had been on said right of way at a time close enough to the derailment as to put the defendant on notice that they could be expected on the right of way at the time of the derailment." The objections made go rather to the weight than to the admissibility of the testimony. If for no other reason, this testimony was admissible on the issue of unavoidable accident, as submitted to the jury. The court defined an "inevitable or unavoidable accident" as "the happening of an event from an unknown cause, or an unusual and unexpected event from a known cause." To show that the cars of appellant had killed 18 cows near this place of accident must certainly have made an issue against appellant's case that the derailment of the car constituted "an unexpected event from a known cause." No matter at what time these cows were killed, the killing of 18 should make an issue against appellant that it might expect collisions between its cars and cattle on its track, especially in view of the testimony showing that cows were often seen on its right of way. Again, appellant offered testimony by one of its employés, who had been in its service for three years, and whose duty required him to go over its tracks, that he had never seen cattle on the right of way. This testimony was admissible to meet the issue thus raised.

[7, 8] As the issue of insurer was not raised by the pleadings or the testimony, and as this case went to the jury on special issues, the court did not err in refusing appellant's charge to the effect that it was not an insurer of appellee's safety while a passenger of its car. Appellant's liability was submitted fully under issue No. 1, and such a charge could not have aided the jury. Nor was it entitled to a charge instructing the jury that it rested under no statutory obligation to fence its track. The statute did not prevent it from fencing its right of way. A high degree of care rested on it to keep its track clear of cattle. Having chosen to fence the right of way as a discharge of this duty to the public, it was for the jury to determine whether the proper care was exercised in constructing the fence originally and in maintaining it after it was so constructed. The same thing applied to the stock guard. As said by Mr. Justice Brewer in A. T. & S. F. v. Reesman, 60 Fed. 370, 9 C. C. A. 20, 23 L. R. A. 768:

"Experience shows that animals may stray upon a railroad track, and, if they do, there is danger that the train may come in collision with them, and be wrecked. Adequate measures, reasonable in their nature, must be taken to guard against such danger. Independently of any statutory requirement, a jury might find, upon the facts of a case, that it was the duty of a railroad company to fence its tracks to guard against such danger."

See, also, Railway Co. v. Thompson, 34 Tex. Civ. App. 69, 77 S. W. 439; Fordyce v. Jackson, 56 Ark. 594, 20 S. W. 528, 597; Railway Co. v. Wilson, 79 Tex. 371, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; Railway Co. v. Quill, 92 Tex. 335, 48 S. W. 168; Railway Co. v. Chenewith, 52 Pa. 382, 91 Am. Dec. 168; Sullivan v. Railway Co., 30 Pa. 234, 72 Am. Dec. 698.

[9] It does not seem to us that special issue No. 1 was vague and indefinite or by its form calculated to prejudice the jury into believing that appellant was guilty of negligence, or a charge on the weight of the evidence. Appellant's assignments raising these propositions are overruled.

The court's charge on proximate cause was sufficiently full to present that issue to the jury, and appellant's assignments in relation thereto are overruled.

Believing the case was properly tried in the lower court, its judgment is in all things affirmed.